Our final case of the day is United States v. Glover. Mr. Rosen. Good morning, Your Honors. May it please the Court, excuse me, Counsel, Mark Rosen appears on behalf of the appellant defendant, Deangelo Glover. It's pretty clear, I think, from what we've submitted with the briefs, that our position is that we have to get to the appellate waiver issue. And our position is clearly that for a couple of reasons, the appellate waiver that was in the plea agreement that Mr. Glover did sign Mr. Rosen, I have an antecedent question. Yes, sir. Does your client want his guilty plea set aside? No. And to go to trial? No, he does not. All right. So, you rely on cases like Sura. Correct. Sura held that a failure to comply with Rule 11b1n is a ground to set aside the whole plea. Are you relying on some case that says that a violation of Rule 11b1n is a ground to set aside the waiver while keeping the plea agreement? I think I put them together. They are distinct. The law of this circuit is that waivers of the right to appeal stand or fall with the plea agreement as a whole. We have, I would say, roughly 100 cases for that proposition. So far as I know, we have never decided that the waiver of appeal could be set aside while keeping the plea agreement in place. And it looks like that's what you're asking for. So I wonder if you have any precedent for the proposition that that can be done. I think if you look at, and that's a very good question, I think the one case that I did find was the dissent in the district court case that Mr. Knight cited in Lee, which No, I'm asking, do you have any case for a proposition? Citing a dissent and $2.50 will get you a cup of coffee at Starbucks. I understand. It won't get you a victory anywhere. Are there any cases for the proposition that noncompliance with that rule of criminal procedure leads to setting aside the waiver while keeping the plea? Not that I've, like the court has said, I don't think that there's any case law that I found one way or the other in terms of that. I think we just looked at the, I think both myself and Mr. Knight sort of looked at it in terms of the validity of the failure to conduct the 11. Actually, the United States brief is very clear that Sura doesn't help you. Well, they don't mention Sura, but they say the principle of Sura doesn't help you because you're not asking to have the whole plea set aside. That's correct. But I think that they did look at, in terms of Sura did look at basically the fact that how the 11B end colloquially, because I think you look at the bigger picture of the appellate waiver itself in terms of how that stands and falls with respect to the court. And I think that when we look at the appellate waiver, because that's one of the cases, their issue is that the appellate waiver itself, by itself, is basically the crux of this case before we even get to it, because I think clearly the government's case. The appellate waiver bars the consideration of any issue on appeal unless the whole plea is vacated, and then there's no appellate waiver. I just hope you see what this point is. I see the distinction. I think that also I think that we still need to look at the fact as to how this occurred at the district court in terms of the fact. Look, do you think there's any ambiguity in Sura? The court was, I thought, very clear. As you know, I dissented in Sura. I thought that nothing should have been set aside. Correct. I read that. But the majority was crystal clear that the violation of Rule 11B1N led to the whole plea being set aside or to nothing. Correct. And the reason we cited Sura was because the government had cited Pollock, which Pollock referred to Sura in its case in the district court case in the opinion where the district court at the colloquy had indicated and the government had indicated during the colloquy, hey, remember Sura. You've got to go through the colloquy of this. Otherwise, we're going to have the same situation that we had in Sura. So the government raised the issue in Pollock, which then referred me back to Sura. And so that's kind of what I was going at in terms of it, and that's kind of what we're looking at here in terms of the validity of the waiver in terms of any appellate issue because I think it looks at the issue that we are not allowed to appeal any appellate issue, including a sentencing issue, because of the appellate waiver. If you ask to have the pleas set aside, you're entitled to that relief under Sura. Then you go back, and any errors can be raised on appeal. The point, and this stems from the Venger decision in 1995, the point is that you can't have the benefits of the plea agreement while avoiding the detriments. If you don't like one detriment, you may be able to avoid the plea agreement, but then you have to give up the benefits. You can't play the game of what's ours is ours, what's yours is negotiable. That doesn't work. And I understand that. I understand that. It's just that we are positioned as that because of the substantial right that we had relied upon, and I think that was what, and I understand the lee-to-scratch decision of the senses, as the court has indicated as a dissent, but I think the fact of the matter is we were simply looking at in terms of how this occurred at the sentencing hearing, and I think the basic fact of the matter is Judge Stanmuller just clearly dropped the ball on the cooperation issue with the 3553A matter by saying that the court couldn't even decide that or rule upon that without the government's consent, which Mr. Knight himself has clearly indicated is not the law based upon the smaucus, I think is how it's considered. So that's where our position was with the substantial right. I can see where the court is coming from on that in terms of the plea agreement in terms of what we're trying to do. I'm coming from the precedent of this circuit, which says that you can't set aside the waiver without setting aside the whole plea agreement. You haven't asked us to overrule that string of cases, and as I've said, it's quite a long string of cases. You just want us to ignore them. That's not a successful approach generally. Well, if need be then, I guess we will take the approach that we need to. I mean, I didn't argue this, but I think we can maybe issue of setting aside the plea agreement. I think that's what Mr. Knight asked me before court. But in terms of that, the basic fact of the matter is I think that the appellate waiver and the situation here does not apply to the issue of the re-sentencing, because as indicated in the plea agreement, this applies to any re-sentencing, not just the issue of waiver of the plea, but the plea appellate waiver talks about not being able to come back to seek a re-sentencing hearing, and I think that's where this applies. I will save the remaining time for rebuttal hearing. Certainly, Mr. Rosen. Mr. Knight. Thank you, Your Honor. May it please the Court, my name is Kevin Knight. I represent the United States. D'Angelo Glover signed his plea agreement. He enjoyed the benefit of that plea agreement, and now he seeks to escape the reciprocal obligations in that plea agreement. Obviously, the obligation I'm speaking of is the appellate waiver that you just discussed, Mr. Rosen. What were some of the benefits of the agreement from your perspective? Yes, Your Honor. Most importantly, the plea agreement bound the government to a low-end guideline range recommendation, which the government honored despite various facts established in the record that would otherwise counsel in favor of a different approach from the government at sentencing. Most importantly, Mr. Glover's misconduct on pretrial release. As the Court knows, and as we explained to Judge Statmuller in our brief to this Court, Mr. Glover, on pretrial release, fled from law enforcement, leaving behind his cell phone, his debit card, his gun, and his drugs. That conduct, were it not for the plea agreement, might very well have, and frequently would, and I think it's fair to say district courts throughout this circuit, counseled in favor of a different sentencing recommendation than that contemplated in the plea agreement. The government, nevertheless, honored its obligation to make that recommendation for Judge Statmuller, and Judge Statmuller ultimately imposed a below-guideline sentence, which I think, in some respects, helps to explain why Judge Statmuller's balancing of the various factors that Mr. Glover presented was perhaps shorter than one might otherwise expect. Again, I'm jumping past what I think is the dispositive issue that Judge Easterbrook identified with Mr. Rosen. The preliminary question- I don't understand how cases like this continue to arise. The bench book for United States district judges has a checklist of what you do to take a plea of guilty, and one of the things on the checklist is a notice about waivers of appeal rights. Obviously, the district court didn't follow the checklist. And then the district judge asked, have I done everything I need to do? And the assistant United States attorney said, yes. How can something like that happen? Why isn't the assistant U.S. attorney following the checklist? Yes, Your Honor. With respect, I think that, as the court knows, we confess legal error on that, that it did not happen, and I think there's no better explanation than human error. The whole point of checklists is you go and you check, right? Is it difficult for an assistant United States attorney to check off each of the things? No, Your Honor. I think that it is not a question of difficulty. It's a question of establishing a regular procedure. I think it's fair to say- You should help the court do the right thing. Yeah. Absolutely. Surgeons who don't follow their checklists kill their patients, right? That leads to huge liability. Why can't assistant U.S. attorneys follow a checklist? Your Honor, speaking as the assistant United States attorney who failed on that score, I will tell the court that surgeons also sometimes forget to count the sponges, and that's all. Yes, and when the surgeon bollockses it, there's a huge money judgment. We're not talking about a huge money judgment here, but it would be good if avoidable errors are avoided. Of course. Of course. And, Your Honor, I don't think that we are in a situation where, certainly speaking personally, it's not a situation that will be repeated. I have appellate waivers and a great many of the plea agreements that I enter into with defendants. I've never had this issue come up before. I have a laminated checklist that I use, and it was human error, and we can only confess it. I think that the— But you have an obligation to make sure that you don't come up—there's no reason for you to be here if you had said something. Respectfully, Your Honor, I think that it would have been appropriate for an Anders brief to be filed in this case such that we wouldn't have to be here. I think that— I think that that—the temerity that defense counsel has demonstrated with respect to their unwillingness or inability to tangle with the precedent that Judge Easterbrook, you cited to him, suggests— Oh, wait a minute. There is somebody here who has been unwilling or unable to tangle with Sura, and that person is you. Your brief does not address Sura. Your Honor, I think that Sura is factually distinct in a number of ways. Of course you think that. But lawyers who believe that a case is distinguishable have to present a legal argument to the court of appeals. They don't just ignore the adverse precedent and then in oral arguments say, well, I could have distinguished it if I had written it upright. You don't ignore adverse precedent, which your brief did. You can understand why we're a little unhappy. Respectfully, Judge, I don't—I didn't anticipate that you would be unhappy on this issue. I thought that we were doing the best we could with an issue that was not even fronted in the opening brief at all. At some point, it's incumbent upon the defense to address that issue in their opening brief. If we, you know, chase the Russian nesting doll of an appellate waiver that was unaddressed, an appellate waiver that stands because the defendant did not attempt to withdraw their guilty plea or otherwise attack the plea agreement— Look, there is ample problem to go around here. There's a problem in the district court. There's a problem in the opening brief. And there's a problem in not following the checklist and ignoring Sura in the brief for the United States. Your Honor, I can only say that I confess error with respect to the Rule 11 error. I am—you know, you have me at riposte on that. That was a mistake. It won't be repeated. With respect to not citing Sura, I don't think that we were in a particularly— You know, we've developed now to a point where Sura is even more relevant insofar as we got a confusing comment from defense counsel about whether he's seeking to withdraw his plea or not. But Sura, its discussion of the appellate waiver is, I think, punchy insofar as it describes how this court is unwilling to surgically excise appellate waivers from plea agreements. But then it moves on, and a great deal of the discussion is about whether or not— My dissenting opinion, and $2.50 will get you a cup of coffee. Right? It's only the majority that counts. But the majority opinion, I think it's first in Sura. I think it's one paragraph that discusses the appellate waiver, and the rest of the opinion in Sura discusses whether or not the defendant should be allowed to withdraw his guilty plea wholesale. As a result of the district judge's failure to comply with Rule 11b1n. But it's an entirely different— That's what the opinion is all about. I don't think we're making any progress by arguing about why you felt privileged to ignore an adverse precedent. But as I said, I hope you can understand why at least some members of this panel are dissatisfied. I appreciate that, Your Honor. If there are any additional questions on Sura that I can answer, I'd appreciate the chance to do that. If we can—if it would be beneficial to the court to look beyond the appellate waiver issue and talk about the substance of the challenges defendants raised, just briefly, I'm happy to do that. I think that, in brief, Your Honor, your first set of questions to Mr. Rosen was exactly correct. To the extent he's not seeking to withdraw his guilty plea, this appeal is a nullity. To the extent he is seeking to withdraw his guilty plea, I think that your dissent in Sura is— My dissent is not worth the paper it's written on. It doesn't count in the Seventh Circuit. Very good, Your Honor. I think that it is the case that Mr. Rosen has not established grounds to have Mr. Glover's guilty plea withdrawn. There is virtually no chance that Mr. Glover would enjoy a substantially different benefit from that contemplated in the plea agreement. The plea agreement describes how Mr. Glover was caught on body camera holding a firearm that was manufactured outside the state of Wisconsin after having been convicted of a felony offense that he knew about. There is no dispute that Mr. Glover was guilty. There is no chance that it affected his substantial rights to not have that appellate waiver addressed at his change of plea hearing. That is, I think, entirely established in the plea agreement that he signed in Attachment A. It's entirely established in the pre-sentence report. So without waiving waiver, you set aside the question of whether Mr. Rosen is actually attempting to withdraw his guilty plea. You set aside the question of the vitality of the appellate waiver. The substantive merits here similarly do not—if the court should somehow reach that question, I don't believe that there's any grounds for relief. The opening brief entirely elides the commentary from Judge Stadmiller, wherein Judge Stadmiller weighs the ostensible cooperation against the record that Mr. Glover presents. The second factual—the second substantive argument Mr. Rosen makes in his opening brief is that somehow the district court relied on facts that were not established in the record with respect to the violence—the risk of violence posed and the history of Mr. Glover. Neither of those things are truly in dispute. They are established in the pre-sentence report he agreed upon and the plea agreement he signed. Subject to Your Honor's questions, I think the judgment of the district court should be affirmed. Thank you. Thank you, Mr. Knight. Anything further, Mr. Rosen? Yes, briefly, Your Honor. This is an issue. I think that when you look at the plea agreement they drafted, Mr. Knight drafted it. And I think when you look at it, it's pretty clear under contract law it's to be construed against the party drafting it. Their draft said the waiver applies to any sentencing arguments. Okay? And that is precisely what we have here is a sentencing argument. So I think we can actually argue that that may be severable because this is all we have here is an issue for appellant for sentencing purposes. And I think that that's the— No, no, no. Hold on. Hold on. The appeal, an appeal of a sentence was excluded, was not allowed, subject to only specific enumerated exceptions. That's correct. But that's where we get into the issue about the validity of the waiver in terms of the validity of the plea agreement. I think when we can look at it, because I think Judge Easterbrook indicated that we have to throw out the—if we're going to have the plea agreement, we've got to throw out the plea. And I think what I'm getting to is that I think the appellate waiver could apply to an issue where we want to preserve the plea but want to appeal the sentencing. And your authority for that is nonexistent, contradicts the law of the Seventh Circuit. Well, I think when you—I think we can—I understand the court's party. And you're—do you stand by the answer you gave at the outset of your argument that your client ended up—I mean I know no one wants a 60-month sentence, but he ended up okay here. Do you want to withdraw his guilty plea? No, we don't want to. Do you want to go to trial on the charges in the indictment? No, we don't. We do not. We want to have a— Then why are you here? We're here to get a new sentencing hearing. That's the only thing you can get here is the end of the plea agreement, the end of the reduction for acceptance of responsibility, the end of the prosecutor's concessions, and reinstatement of all the charges. That's the only thing you can get. And a very, very difficult hand immediately dealt to you on offense conduct and criminal history, instantly. What we should do is grant it and go back and let him be resentenced. That's all we want is a resentencing. So Judge Stradmuller's errors in not being able to consider it as 3553A can be— You think going back before Judge Stradmuller would be a good idea then? At least that would give us the ability to then—if he does reject it, to then argue that. But that's kind of where we're coming from. Thank you very much, Your Honor. I appreciate it. Thank you, Mr. Rosen, and we appreciate your willingness to accept the appointment in this case. The case is taken under advisement and the court is in recess.